GARY S. CASSELMAN, Bar Number 81658
LAW OFFICES OF GARY S. CASSELMAN
P.O. Box 539
Los Angeles, CA 90294-539
Tel. 310/314-4444 Fax 310/ 314-4447
garyscasselman@gmail.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BRIGHT,<br><br>     Plaintiff,<br><br>v.<br><br>CITY OF SANTA MARIA, CHIEF PHIL HANSEN, SGT. JESUS VALLE #19091 RICARDO ARIAS #21116, DANIEL MARTINEZ #90346, DOES 1-10,<br><br>     Defendants. | Case No.<br><br>COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS 42 U.S.C. § 1983<br><br>DEMAND FOR JURY TRIAL<br><br>1. 42 USC 1983 (4th A. Violation - Unreasonable Seizure/ Ex. Force)<br>2. 42 USC 1983 (2nd, 4th Amend. Violation - Unreasonable Warrantless Search and Seizure)<br>3. 42 USC 1983 (2nd, 4th Amend. Violation - Unreasonable Search & Seizure)<br>4. 42 USC 1983 (4th Amend. Violation - Malicious Prosecution)<br>5. 42 USC 1983 Conspiracy to Deprive Civil Rights<br>6. 42 USC 1983 Substantive Due Process Deprivation (Devereaux)<br>7. Municipal Liability (Monell) |

PLAINTIFF JOHN BRIGHT, for a Complaint alleges as follows:

## JURISDICTION

1.    Jurisdiction of this Court is invoked under 28 U.S.C. Section 1331 and 1343.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

2.    At all times herein mentioned, Plaintiff JOHN BRIGHT was an

adult male individual residing and self-employed in the City of Santa Maria, California and within the Central Judicial District of the United States District Court.

3.  Defendants City of Santa Maria (hereinafter "CITY") is and at all times herein mentioned has been a public entity and an incorporated city duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant CITY possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the SANTA MARIA POLICE DEPARTMENT ("SMPD"), and particularly said Department's Training and Personnel Divisions , Patrol, SWAT, Internal Investigations and other operations and subdivisions presently unidentified to Plaintiff and their tactics, methods, practices, customs and usages.

4.  Plaintiff is informed and believes and thereon alleges that each of the Defendants designated as a DOE is responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged.  The true names and capacities of DOES 1 through 10, inclusive, and each of them, are not now known to Plaintiff who therefore sues said Defendants by such fictitious names.  Plaintiff will amend this Complaint in accordance with California Code of Civil Procedure Section 474 and FRCP 15 to show their true names and capacities when same have been ascertained.

5.  At all times herein mentioned, Defendants PHIL HANSEN Chief of Police, RICARDO ARIAS #21116, SGT. JESUS VALLE #19091, DANIEL MARTINEZ #90436 and DOES 1-10 are (or were) believed to be employees and agents of the CITY OF SANTA

Complaint for Damages

MARIA, and SANTA MARIA POLICE DEPARTMENT, a department of the City of Santa Maria.  All said defendants were acting under color of law within the meaning of 42 U.S.C. § 1983.

6. Defendants, and each of them, did the acts and omissions hereinafter alleged maliciously, in bad faith and with knowledge that their conduct violated clearly established and settled law.

7. This action has been tolled during the pendency of the criminal prosecution of plaintiff John Bright, pursuant to California Government Code § 945.3, applicable through federal law herein.

8. On December 14, 2017, 2-3 months prior to the subject incident, Plaintiff and his wife Tanya were arguing, resulting in a response by SMPD police officers, including defendant Valle.  After investigation no enforcement action was undertaken.

9. Before the four initially arriving officers left on December 14, 2017, they observed Plaintiff's USMC sticker on his vehicle and USMC globe and anchor tattoo.  They inquired where he had served and his MOS (military occupational specialty).  Plaintiff replied that he had been a United States Marine Corp (USMC) military policeman for almost 18 years.

10. Plaintiff commented in essence that, had there been an actual threat, their poor tactical approach left a vulnerability with potential for exploitation, and catastrophic consequences.

11. Defendant Valle did not hear the entire conversation but only heard a part near the end in which Plaintiff chided his fellow Marines for poor tactics. Valle became biased against Plaintiff.

12. On February 18, 2018, Plaintiff and SMPD were notified of a burglar alarm activation at Plaintiff's residence but stated that it would take at least 45 minutes before officers would be available to respond.

3
Complaint for Damages

13. Plaintiff advised SMPD dispatch that he was armed, did not want to wait 45 minutes for SMPD and would clear the house himself.

14. On or after the subject incident of March 2, 2018, defendant Arias' report of the subject incident falsely portrayed Plaintiff as having threatened police officers on December 14, 2017.

15. On March 2, 2018 defendants Arias, Martinez, Valle and Does 1 through 5 responded to 1314 Seaward Avenue, Santa Maria, California due to a neighbor's call reporting alleged arguing and gunshots at Plaintiff's home next door.

16. Prior to arrival on scene, defendants were unable to corroborate the neighbor's call that there had been gunshots, nor did they hear any gunshots or observe anything to indicate that any shots had been fired by Plaintiff or anyone else in or about his residence.

17. Defendants knew Plaintiff John Bright to be a local auto repossessor who commonly communicated with police dispatch to report imminent repossessions being effected to avoid mistaken reports of theft while he lawfully repossessed motor vehicles.

18. Defendants also knew that Plaintiff John Bright had no history of violence and no prior arrests for any violent offense.

19. In his March 2, 2018 Crime Report about the subject incident, defendant Valle falsely reported as fact "Prior calls indicated aggressive behavior with Officers ..." "In the past he [Plaintiff] has communicated the fact that he could take out (shoot) officers on their approach to his home."

20. This was a blatantly false statement by defendant Valle to other SMPD officers, prosecutors and the court to portray Plaintiff as dangerous toward police officers.  Plaintiff alleges that these material misrepresentations were a post hoc effort to justify the

Complaint for Damages

oversized militarized police presence, poor tactics and use of grotesquely excessive force against Plaintiff on March 2, 2018.

21. Notwithstanding Plaintiff's lawful conduct on the foregoing occasions, defendant Arias' March 2, 2018 falsehoods to other members of SMPD about Plaintiff prejudiced, denigrated and endangered Plaintiff.

22. Many SMPD officers were ordered by Arias, Valle and other SMPD supervisors to treat Plaintiff as a dangerous armed suspect who had previously threatened officers with harm, raising the completely false threat of an armed confrontation.

23. Defendant Arias filed a false police report of the subject incident of March 2, 2018 stating that Plaintiff was a danger to himself and others, as set forth in Welfare & Institutions Code 5150, inferring that Plaintiff was or should be taken into custody for a hold for psychiatric evaluation.

24. Defendant Arias falsely and maliciously included this false 5150 accusation in his own report of the subject incident to justify or cover for defendants' over reaction, use of deadly force and mendacious reports, illegal entry, searches, E.P.O., and search warrant application with material misrepresentations/ omissions.

25. Defendants unreasonably overreacted by sending a SWAT team of highly armed officers (including defendant Martinez) to deploy in the street in front of Plaintiff's residence.

26. Defendant Arias falsely claimed in his report submitted to the DA's office to initiate criminal prosecution to have repeatedly spoken with Plaintiff before Plaintiff called the police dispatcher at 11:10 am on March 2, 2018.

27. Defendant Arias' report was false that he had made calls into the

1    residence.

2    28.   Defendants knew Plaintiff's cell phone number because he

3          regularly called from that phone into SMPD during the course of

4          his business of lawfully repossessing automobiles.

5    29.   Plaintiff had not been contacted by any defendant prior to his

6          11:10:46 a.m. call to SMPD dispatch, nor had there been any prior

7          audible P.A. announcement.

8    30.   Responding to Plaintiff's inquiry, the police dispatcher told him

9          that the police were there because of him and urged Plaintiff to go

10         out and talk to the police officers. Plaintiff and his wife Tanya

11         obediently exited their home.  Both explained that there had

12         merely been a verbal argument and no one was injured or harmed.

13   31.   Plaintiff, an honorably discharged former USMC military policeman,

14         lifted his shirt above his waist and pirouetted to show the officers

15         that he was unarmed and harmless to them.

16   32.   At that point there was no lawful basis to seize Plaintiff.

17   33.   Plaintiff declined an unlawful order to crawl towards the

18         defendant officers.  Without moving his feet, Plaintiff turned

19         toward his wife standing two or three steps to his right rear.

20   34.   At or about that moment, defendant Martinez inexplicably fired

21         his shotgun loaded with a 40 mm projectile, striking Plaintiff's

22         side torso.

23   35.   There was no threat, imminent, deadly or otherwise to justify the use

24         of potentially deadly force.  Defendant Martinez later admitted

25         under oath that he knew that Plaintiff was unarmed when he shot

26         him and only did so to prevent him from returning to his home,

27         possibly getting a firearm, returning and shooting an officer.

28   36.   Plaintiff suffered a serious injury which required hospitalization.

37.  After being shot and injured, Plaintiff was taken into custody without probable cause allegedly for violation of Penal Code 69, felony resisting arrest through the use of violence.  Penal Code 69 is for unlawful use of force or violence against an executive officer by threats or violence, not felony resisting arrest.

38.  Plaintiff was subjected to criminal prosecution by the Santa Barbara County District Attorney for alleged violation of Penal Code 69.  That lone charge was later augmented by the Santa Barbara County Deputy District Attorney who added a charge of violation of Penal Code 148, delaying, resisting or obstructing an officer lawfully engaged in the performance of his/her duties as a police officer.

39.  Plaintiff was charged by the Santa Barbara District Attorney with violation of Penal Code 69 and 148, a felony and a misdemeanor respectively, in Case No. 18CR03097 in the County of Santa Barbara, Santa Maria branch court.

40.  These criminal charges remained pending until the April 30, 2021 dismissal with "no strings attached' in Santa Barbara Superior Court, Santa Maria Division.

41.  Dismissal of the charges was not in consideration of any quid pro quo by Plaintiff and is indicative of his innocence of all charges.

42.  Plaintiff's right to bring the instant federal civil rights action was tolled pursuant to California Government Code § 945.3 during the pendency of the time between his arrest on March 2, 2018 and April 30, 2021 when the criminal prosecution was dismissed.

//

//

//

FIRST CLAIM

AGAINST DEFENDANT MARTINEZ FOR FOURTH AMENDMENT

VIOLATION (UNREASONABLE SEIZURE & EXCESSIVE FORCE)

PURSUANT TO 42 U.S.C. § 1983

43.  Plaintiff repeats and realleges paragraphs 1 through 42 as though fully set forth herein.

44.  Defendant Martinez's unjustified firearm use against Plaintiff without factual or legal justification was excessive force, in violation of Plaintiff's established Fourth Amendment right to be free of an unreasonable seizure under the U.S. Constitution.

45.  Defendant Martinez knew that Plaintiff was unarmed, posed no threat to any person or officer when Martinez fired the so-called "less lethal" 40 mm high speed projectile striking Plaintiff in his side torso.  Defendant later claimed that he feared Plaintiff was on his way to go inside his home, arm himself and shoot officers upon his return was contrived and false.

46.  At the time of the shooting, Plaintiff was not an immediate or any threat to Martinez or anyone else.  No reasonable police officer would have thought otherwise.

47.  Defendants, including Martinez and his supervisor Valle, knew that the earlier call of "shots fired" made by a nervous neighbor was erroneous, apparently reacting to sounds of broken glass.

48.  When Plaintiff was shot – on his front lawn – there was no probable cause to seize him for domestic violence or anything else, though the initial police presence was to investigate a "shots fired" call and possible domestic violence.

49.  Before Martinez shot Plaintiff, he and all defendants present knew that there had been no shots fired and no domestic violence.

50.  Defendant Martinez selected a 40 mm Safariland eXact iMpact projectile (Part No. 6325LE) on which was written:

> LE Extended Range, Operational Range: 10-70 meters.  WARNING!  DO NOT use this round at a distance closer than 10 meters (33 feet) as it could cause serious injury or death.

51.  A true copy of the "extended range" projectile which struck Plaintiff at close range is set forth below.



52.  Lacking factual, legal or moral justification for use of deadly force, Defendant Martinez also unreasonably contravened express written warnings about "serious injury or death" from misuse of the "LE Extended Range" ammunition by its close up use, shooting Plaintiff at point blank range, from less than 10 meters away, causing him great pain, loss and disfigurement.

53.  Defendant Martinez's selection of and discharge of his shotgun, shooting and striking Plaintiff at close range (or at all), was an unreasonable seizure through excessive force within the meaning

Complaint for Damages

1   of the Fourth Amendment to the U.S. Constitution.

2  54. Plaintiff alleges that one or more SMPD officers Does 1-3 , superior

3       to Martinez, advised or ordered defendant Martinez to use deadly

4       force to prevent Plaintiff from re-entering his residence.

5  55. Thereafter, the seriously injured Plaintiff was seized, handcuffed and

6       arrested on the false premise that he had violated California Penal

7       Code 69 for preventing an officer from performing a lawful duty

8       through the use of threats or violence.

9  56. Defendants' seizure of Plaintiff was not sought for a legal purpose

10      but to allow defendants and each of them more time to illegally

11      search for and illegally seize his lawfully acquired firearms, though

12      no firearm was in Plaintiff's immediate possession nor used by

13      Plaintiff during the subject incident as corroborated to defendants by

14      Plaintiff's wife.

15  57. Plaintiff suffered injury, damage and harm, including physical

16      and emotional distress requiring medical treatment.

17  58. Although Plaintiff was taken to an urgent care facility after his

18      arrest and before booking by defendants, he was not allowed to be

19      given medical treatment for his gaping wound until hours later at

20      the SMPD jail, unnecessarily causing him further pain and suffering,

21      exacerbating his continuing Fourth Amendment violation.

22  59. Notwithstanding the credible statement by Plaintiff's wife, Tanya,

23      to SMPD officers, including Valle, that there had been no domestic

24      violence nor any firearm used but only a verbal argument,

25      defendant Valle prepared an emergency protective order with the

26      specific intention of causing Plaintiff's firearms to be taken from

27      his home and possession and this application for an EPO was

28      presented to the judge as accurate, though known to Valle to be

1    misleading and false in material part.

2    60.   Plaintiff has had and/or will require psychological treatment as he

3          suffered Post Traumatic Stress Disorder prior to the incident

4          which condition was greatly exacerbated by the incident and the

5          years long groundless prosecution.

6    61.   Plaintiff incurred years of expense and obligation to retain

7          criminal defense counsel against the false charges lodged and

8          maintained against him by defendants.

9    62.   Defendants maliciously persisted in the groundless prosecution for

10         over 3 years, at all times urging the Office of the District Attorney

11         of Santa Barbara County to persist with the prosecution of

12         Plaintiff in a malicious attempt to convict Plaintiff of crimes that

13         they knew he had not committed, yet persisted to undermine and

14         deprive Plaintiff of his legal remedies for violation of his

15         constitutional rights.

16   63.   Plaintiff's business, The Repo Company, suffered loss of customers

17         and income due to the stigma of defendant's bogus criminal

18         prosecution of Plaintiff caused by Defendants.

19   64.   Continued written and/or oral falsehoods told to the DA and the

20         Court by defendants Valle, Arias and Does 1-10 during the criminal

21         prosecution spread through the community of Santa Maria and

22         surrounding areas serviced by The Repo Company.

23   65.   Plaintiff suffered and continues to suffer a loss of income from his

24         repossession business inter alia for 3 years or more after his

25         March 2, 2018 arrest and prosecution.

26   66.   The actions of Defendants toward Plaintiff were fraudulent,

27         oppressive and malicious, meriting an award of punitive damages

28         against each of them individually in an amount sufficient to

Complaint for Damages

punish them and deter others from similar misconduct.

## SECOND CLAIM

## AGAINST DEFENDANT ARIAS, MARTINEZ, VALLE, DOES 1-10
## WARRANTLESS SECOND, FOURTH AMENDMENT VIOLATION
## (UNREASONABLE SEARCH AND SEIZURE)
### (42 U.S.C. § 1983)

67.   Plaintiff repeats and realleges paragraphs 1 through 66 as though fully set forth herein.

68.   Defendants physically seized the unarmed plaintiff outside his residence[1], knowing full well that he had not possessed, brandished or used a firearm in their presence and that they lacked a legal basis to enter or search his home incident to his physical seizure.

69.   There was no exigency and no consent was given or requested.

70.   Immediately following the unlawful seizure(s) of Plaintiff, defendants Arias, Martinez, Valle and Does 1-10 entered Plaintiff's residence, garage and automobiles without a warrant, consent or probable cause.  Doe 4 is an SMPD canine handler who unlawfully entered and moved about within Plaintiff's residence with his dog in a warrantless search without lawful basis.

71.   Defendants Martinez, Valle, Arias, Does 1-10 conducted unlawful searches while Plaintiff remained at the scene in custody, having been arrested on his front lawn outside the residence, garage and autos.

72.   Unlawful searches included closed containers located in the residence, garage and/or automobiles.

73.   The warrantless search went on for as much as 2-3 hours.

_____

[1] Plaintiff was first seized (pre-exit) when his home was surrounded by armed police and he was not free to leave. U.S. v. Al-Azzawy 784 F.2d 890 (9th Cir. 1985)

Complaint for Damages

74. Plaintiff is informed and believes that unlawful seizures of his property and belongings occurred during the warrantless search.

75. No defendant intervened to prevent the violation of Plaintiff's constitutional rights alleged herein.

76. During the warrantless searches, Plaintiff's property was damaged and his right to privacy infringed by marauding SMPD employees.

77. Plaintiff claims injury, damages and harm to person and property from defendants' warrantless search in an amount to be proven at the time of trial.

78. Plaintiff necessarily incurred expense and obligation for an attorney to vindicate his rights as a result of the unreasonable search and seizure.

THIRD CLAIM

AGAINST DEFENDANTS ARIAS, MARTINEZ, VALLE, DOES 1-10

FOR SECOND AND FOURTH AMENDMENT VIOLATIONS

(UNREASONABLE SEARCH AND SEIZURE) (42 U.S.C. § 1983)

79. Plaintiff repeats and realleges paragraphs 1 through 78 as though fully set forth herein.

80. Plaintiff had a Second Amendment right to possess firearms and ammunition for the protection of his home and family.

81. In violation of Plaintiff's Second and Fourth Amendment rights, Defendant Valle, Arias and Does 1-2 prepared and presented a materially false affidavit to a judicial magistrate with material omissions in a fraudulent request to obtain a search warrant for firearms and ammunition at Plaintiff's residence.

82. Defendant Valle's material omissions were, inter alia, no domestic violence had occurred just a loud argument, there was no use or discharge of a firearm, Plaintiff had never threatened police officers

13

Complaint for Damages

on any prior occasion, Plaintiff had not committed a violation of Penal Code 69, was not subject to a Welfare & Institutions Code § 5150 hold for mental evaluation, that defendants entered Plaintiff's home, conducting a warrantless search prior to applying for a search warrant, albeit on false and misleading grounds.

83. Defendants lacked Plaintiff's consent, factual basis or legal authority to enter Plaintiff's residence purportedly incident to his arrest which occurred in the front yard outside his residence on March 2, 2018.

84. Defendants' aforesaid unlawful seizure of Plaintiff was unreasonably prolonged (and he was not promptly taken before a magistrate in violation of California Penal Code § 825) while defendants unlawfully and without a warrant searched Plaintiff's residence.

85. During or after Defendants entered Plaintiff's residence to search without a warrant, thereafter they sought to obtain a warrant to enter Plaintiff's home to search it, hoping to find contraband or some evidence of crime even after they had entered and searched before a warrant was sought.

86. Defendant Valle's application for a search warrant was legally unjustified.  It omitted the prior warrantless entry and search as well as the false accusations of crimes by Plaintiff which was not revealed in the application for a search warrant.

87. The application contained material misstatements of fact and omitted facts that, if included or known to the magistrate, would likely cause a judicial magistrate to deny the application and refuse to authorize the search.

88. Defendant Valle, affiant for the search warrant, knew or reasonably suspected that a judicial magistrate would sign a search warrant containing materially false and inflammatory

statements, unaware of material misrepresentations contained therein, also unaware of material omissions which would defeat the purported probable cause asserted to justify a search.

89.   Issuance of the search warrant for firearms and ammunition was without probable cause to believe that evidence of a crime would be found.  Seizure of Plaintiff's firearms without probable cause violated Plaintiff's Second and Fourth Amendment right to possess said firearms.

90.   Search of Plaintiff's residence with a warrant that defendants knew or which a reasonable police officer should know lacked the indicia of probable cause – despite its issuance by a magistrate – violated Plaintiff's Fourth Amendment right to be free of unreasonable searches and seizures.

91.   Defendants searching Plaintiff's home knew that the warrant was defective due to the material misrepresentations and omissions contained in the affidavit.

92.   Defendants knew or should have known that they lacked legal basis to search before and after the warrant's issuance. Accordingly, affiant defendant Valle, and searching officers Arias, Martinez and defendants Does 1-5 were unjustified nor reasonably relying upon said warrant.

93.   Defendants' search of Plaintiff's home was unreasonable.  Despite issuance of the warrant as described above, no reasonable police officer would believe that it was supported by probable cause.

94.   Defendants unreasonably seized and held Plaintiff's firearms on March 2, 2018 and did not release them until mid 2022, long after the underlying criminal prosecution had been dismissed.

95.   Moreover, while Plaintiff's unreasonably seized firearms were held

15

1   by SMPD, they were not properly maintained and were damaged or

2   destroyed as Plaintiff discovered upon their return to him in 2022.

3   96.   No defendant intervened to prevent the violation of Plaintiff's

4          constitutional rights alleged herein.

5   97.   Plaintiff was thus prevented from further possession of his

6          lawfully acquired firearms to his further injury, damages, harm.

7   98.   Plaintiff was injured, damaged and harmed by the search and

8          seizure of his property, including his firearms, ammunition and

9          other property seized, dislodged, damaged or destroyed.

10  99.   Said damages were proximately caused by defendants Arias,

11         Martinez, Valle and Does 1-10 in an amount to be shown at trial.

12  100.  Plaintiff was required to retain counsel and incur expense and

13         obligation to vindicate his Second and Fourth Amendment rights

14         violated by defendants.

15                          FOURTH CLAIM

16         AGAINST ALL DEFENDANTS FOR FOURTH AMENDMENT

17         VIOLATION (MALICIOUS PROSECUTION) (42 U.S.C. § 1983)

18  101.  Plaintiff repeats and realleges paragraphs 1 through 100 as

19         though fully set forth herein.

20  102.  Individual defendants, including but not limited to Arias and Valle,

21         prepared, presented (or acquiesced in presentation of) manifestly

22         false reports of crime against Plaintiff for the subject incident to the

23         Office of the District Attorney (DA) knowing that said reports and

24         request for criminal prosecution would be received and accepted

25         uncritically without independent investigation by the DA's office.

26  103.  In reliance on materially false reports by defendants Arias, Valle and

27         Does 1-10, acquiesced in by defendants and each of them, Plaintiff

28         was falsely charged and maliciously prosecuted in DA No. 18-03-

418980, Case No. 18CR03097 based on the falsehoods and intentional omissions by defendants and each of them made to the Office of the Santa Barbara District Attorney, Santa Maria Division.

104. Defendants and each of them urged, expected, relied on the Office of the District Attorney to secure a conviction or other compromise to immunize them from civil suit and which would deprive Plaintiff of his right to pursue his just remedies for their egregious violations.

105. Plaintiff's right to be free of unreasonable seizure was violated by: (a) excessive force upon him; (b) arrest and incarceration on false charges; (c) compulsion to appear in court for years on manifestly unsupported criminal charges falsely and maliciously presented, maintained and prosecuted in the Santa Maria Division of the Superior Court of the County of Santa Barbara, State of California.

106. In Albright v. Oliver 510 U.S. 266 (1994) the United States Supreme Court held that the petitioner's criminal prosecution without probable cause was a "surrender to the State's show of authority [and] constituted a seizure for purposes of the Fourth Amendment." Id. at 271.

107. Likewise, the initiation and maintenance of criminal charges against Plaintiff by Defendants without probable cause was a surrender to the State's show of authority over Plaintiff and thus unreasonable seizure of his person under the Fourth Amendment.

108. Despite the flagrant and continuing violation of Plaintiff's constitutional rights alleged herein, no defendant at any time intervened on Plaintiff's behalf to stop or ameliorate said violations.

109. Plaintiff suffered physical and mental pain, distress, injury, damages, loss and harm from malicious prosecution by Defendants in an amount to be shown according to proof at the time of trial.

110. Plaintiff was required to retain and pay criminal defense counsel, incurring expense and obligation to his counsel for over three years from his arrest on March 2, 2018 until dismissal on April 30, 2021.

111. Plaintiff suffered loss of income from his repossession business as well as loss of personal reputation in the community.

112. For years Plaintiff was repeatedly compelled to attend court because of the groundless prosecution initiated and maintained by defendants and each of them.

113. Plaintiff was required to incur expense and obligation to counsel to vindicate the violation of his civil rights in the underlying criminal prosecution and this civil action for redress under Title 42 United States Code, Section 1983.

114. The actions of defendants Arias, Valle and Martinez toward Plaintiff were reckless, fraudulent and/or malicious meriting an award of punitive damages against each of them individually in an amount sufficient to punish them and deter others from similar misconduct.

FIFTH CLAIM

AGAINST DEFENDANTS ARIAS, VALLE, MARTINEZ

DOES 1-10 FOR CONSPIRACY TO DEPRIVE PLAINTIFF

OF HIS CIVIL RIGHTS UNDER THE U.S. FIRST, SECOND,

FOURTH, FIFTH, FOURTEENTH AMENDMENT

115. Plaintiff repeats and realleges paragraphs 1 through 114 as though fully set forth herein.

116. Defendants Arias, Valle, Martinez conspired to violate Plaintiff's Fourth Amendment right to be free of unreasonable search and seizure, and his First, Second, and Fourteenth Amendment rights.

117. Said defendants prepared and acquiesced in the preparing and filing of false police reports, lied to the DA to cause filing of a criminal

Complaint for Damages

prosecution, continued falsehoods and withheld truths, falsely publicized and characterized the subject incident as a "standoff" by Plaintiff, in a continuing conspiracy to cause Plaintiff to be prosecuted and continue to be prosecuted for a crime that they knew had not been committed.

118. Defendants pursued and maintained this conspiracy to prosecute Plaintiff, seeking his conviction at trial or a resolution by a plea bargain which would legally preclude/bar Plaintiff from vindicating his constitutional rights by a lawsuit after the end of prosecution.

119. This was done to cause Plaintiff, by attrition or expense, to acquiesce to plead to some lesser charge which would impair and prevent Plaintiff from filing a lawsuit for violation of his constitutional rights.

120. Despite the foregoing and pressure to do so by the Deputy DA, who unknowingly misrepresented the facts of the incident, repeating defendants' lie that this was a standoff, Plaintiff refused to accept an offer to plead to a lesser charge or even a dismissal, if conditioned on some act (such as attendance at an anger management class).

121. No defendant intervened to prevent the violation of Plaintiff's constitutional rights alleged herein.

122. Plaintiff claims damages in an amount and manner according to proof as well as attorney fees pursuant to Title 42 U.S.C. § 1988.

123. The conspiring defendants' actions and deliberate omissions, include not intervening to prevent the misconduct of their co-conspirators or to report on co-worker co-conspirators' misconduct inside or outside the SMPD or to the City of Santa Maria, merit the imposition of an award of punitive damages in an amount sufficient to punish and make example of defendants Arias, Valle and Martinez, Does 1-10.

## SIXTH CLAIM

## AGAINST DEFENDANTS ARIAS, VALLE

## FOR DEPRIVATION OF PLAINTIFF'S RIGHT TO

## SUBSTANTIVE DUE PROCESS

(Devereaux v. Abbey, 263 F.3d 1070 (9th Cir. 2001)

124. Plaintiff repeats and realleges paragraphs 1 through 123 as though fully set forth herein.

125. At all times material herein, Plaintiff had a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government.

126. All defendants, including Arias and Valle, were required to provide truthful, not misleading or false information to the Office of the District Attorney and the Superior Court and judicial officers.

127. The crime report expressly states that it was being forwarded "to DA's Office for prosecution on [sic] John Bright and Tonya Bright" that it be relied upon to criminally prosecute Plaintiff.

128. Defendants Arias and Valle reasonably believed that their report(s) would not be investigated by prosecutors or the Court and be relied upon as a truthful basis to file and maintain criminal charges.

129. The proper functioning of the legal system, particularly in criminal cases where a defendant's liberty is at stake, is that police do not falsify, mislead or omit material facts.

130. Defendant Arias wrote in his crime report of a safety flag at Plaintiff's residence based on alleged prior aggressive actions toward SMPD officers. Defendant Arias falsely reported that these prior aggressive actions "were documented under 2018CR1827".

131. In fact, the February 17, 2018 incident report in 2018CR1827 does

1    not support that at all.

2  132.  Defendant Arias falsely stated in his report that Plaintiff stated that

3        "he could take out (shoot) officers on their approach to his house."

4        This was a deliberate or a reckless misleading account of a jocular

5        chiding by Plaintiff of fellow U.S. Marines, members of SMPD, which

6        was not threatening or received as a threat.  See ¶¶13-15, supra.

7  133.  Defendant Arias falsely claims in his report to have made 15 or more

8        PA announcements to Plaintiff which were heard on the other side

9        of his residence.  Plaintiff denies that any such calls were made or

10       received.  In fact, officers on the other side of Plaintiff's house did not

11       hear any PA communication.

12  134.  Defendant Arias falsely and misleadingly reported "Bright would yell

13       at us through a window and was highly agitated. He was screaming

14       profane remarks to us about us being present. His extreme anger

15       was unprovoked and it appeared he was irrational."  In fact, as heard

16       on a recorded call with the SMPD dispatcher beginning at 11:10 a.m.

17       Plaintiff asked the dispatcher why the police were in the street in

18       front of his house.  He then followed the dispatcher's suggestion that

19       he go outside and talk to the police.  Plaintiff was only agitated after

20       he was shot by defendant Martinez, without legal justification,

21       occurring during the recorded telephone call with the dispatcher.

22  135.  Defendant Arias falsely reports that police were unable to determine

23       if shots had been fired inside the residence. But, both Plaintiff and

24       purported victim, his wife Tanya, had come outside and told police

25       that they had only verbally argued, there were no shots or injuries.

26  136.  Defendant Arias falsely reports that police "could not account for the

27       two young children that are known to reside at the house".

28  137.  In fact, this was a school day and defendant Arias had no reasonable

belief that Plaintiff's children were at home.  Police had not tried to account for their whereabouts by calling the children's school, nor did they inquire of Plaintiff, his wife or the neighbor.

138.   Defendant Arias reports that Plaintiff and his wife, Tanya, (erroneously reported as "Tonya") failed to comply with police orders after exiting the residence.  He fails to mention that alleged victim Tanya came outside with Plaintiff and informed officers that there was only an argument, nothing physical, no one was hurt.  This omission of a critical detail undermines the police mission to investigate a domestic violence "shots fired" call. There was no domestic violence and there were no shots fired, all of which was known to SMPD officers.  Arias' report leaves the false impression that Plaintiff and his wife were non-compliant with a proper police investigation and lawful police requests.

139.   Defendant Arias falsely claimed that several hours passed after Plaintiff had been shot before he was taken into custody.

140.   However, this is misleading because it occurred after Plaintiff was unlawfully shot by defendant Martinez, apparently based on an unlawful order by a supervisor to shoot the unarmed plaintiff.

141.   Defendant Valle on March 2, 2018 applied for an emergency protective order (EPO) that Plaintiff surrender all firearms based on by then proven mistaken allegations of "shots fired" by the reporting party next door neighbor.

142.   Defendant Valle knew that there had been no domestic violence and no shots fired or firearm used by Plaintiff as both Plaintiff and his wife, Tanya, informed them.

143.   Judge Gustavo Lavayen signed the EPO on March 2, 2018 at 2229 based on the material misrepresentations and omissions by

defendant Valle.

144. Using the same misrepresentations and omissions as aforesaid, defendant Valle applied as affiant for a search warrant, following a warrantless search of Plaintiff's home without probable cause.

145. Without Valle's misrepresentations and material omissions which mischaracterize Plaintiff and prior police contacts, the affidavit would lack probable cause and would not be issued by a neutral and detached magistrate.

146. Defendants Valle and Arias could not reasonably rely on a search warrant obtained by the material misrepresentations and omissions which were known by them to be false and misleading, rendering the search improper and unreasonable.

147. Defendants Valle's and Arias' material misrepresentation and omission of the true facts of the aforesaid subject incident caused the Office of the District Attorney and the Superior Court of Santa Barbara, Santa Maria Division to prosecute Plaintiff and continue to do so for years based on continuing false and misleading reports, testimony and communications for years until the case was dismissed.

148. No defendant intervened to prevent the violation of Plaintiff's constitutional rights alleged herein.

149. Plaintiff was harmed in an amount and manner to be shown according to proof, including the necessity to hire criminal defense counsel and civil rights counsel to whom he is obligated in an amount to be shown according to proof.

//

//

//

## SEVENTH CLAIM

## AGAINST DEFENDANTS CITY OF SANTA MARIA,

## DEFENDANT HANSEN FOR MUNICIPAL LIABILITY

150. Plaintiff repeats and realleges paragraphs 1 through 149 as though fully set forth herein.

151. At all times herein mentioned, defendant CITY and employees acting under their direction and control, knowingly and intentionally promulgated, maintained, tolerated, applied and enforced policies, customs, practices and usages in violation of the provisions of the First, Second, Fourth and Fourteenth Amendments of the United States Constitution, which custom, policy, practice and usage at all times herein mentioned required, or at least encouraged, tolerated or ratified, the employment, deployment and retention of persons as peace officers who are innately or due to deficient training and/or deliberate indifference to the need for such training of its officers and supervisors by defendant CITY were unsuitable due to bias, prejudice and/or with a propensity for manifesting excessive violence, cruelty, dishonesty toward and upon all manner of persons with whom they come in contact in the course of their duties as peace officers.

152. Defendant City of Santa Maria and defendant Chief Phil Hansen promulgated, maintained and tolerated, inter alia, a use of force policy at the time of the March 2, 2018 incident and for an indeterminate time thereafter, which did not align or comport with federal constitutional standards set for police use of force.

153. Individual SMPD officers and their supervisors were encouraged and allowed to use their own unfettered discretion in the use of force and deadly force by members of the rank and file, including

but not limited to defendant Martinez using his firearm upon the unarmed plaintiff.

154. Specifically, the City maintained a custom, policy or practice of allowing or tolerating the use of deadly force, including the firing of projectiles at close or point blank range when there is no immediate threat of great bodily harm or death.

155. Plaintiff is informed, believes and thereon alleges that pursuant to and consistent with the custom, policy and practice of the City of Santa Maria Police Department no discipline or retraining was provided or required to be suffered or undergone by defendants Martinez, Arias, Valle and others despite clear violations of Plaintiff's federal civil and constitutional rights.

156. Substandard and deficient training and supervision in the use of force was the de facto custom policy and practice of the SMPD.

157. Custom, policy and practice is also shown by the misleading, false and deficient reports submitted concerning the subject incident, including lack of supervision for the material misrepresentations and omissions in reports and affidavits submitted to judicial officers and prosecutors, all of which occurred and were tolerated without retraining, discipline or termination of the miscreant SMPD officers.

158. Plaintiff is informed and believes that defendants, including but not limited to Martinez, Arias, Valle, Hansen used or tolerated the use of excessive force against Plaintiff, warrantless search and seizure, materially false affidavit for search warrant which misrepresented and omitted material facts, preparation of false reports of the subject incident which were submitted to the Office of the Santa Barbara District Attorney, knowing that they would be relied upon as accurate, truthful and complete when they were not, resulting in

Plaintiff's prosecution based on lies and omissions.

159. Additionally, City of Santa Maria, condoned, tolerated, ratified warrantless search, submission of materially false affidavits for search warrants, particularly in omitting material facts, revelation of which would defeat probable cause for issuance. No appropriate training or discipline was urged or given for these derelictions.

160. Pursuant to said policy, custom, practice and/or usage defendants DOES 6 through 10 were at all times herein mentioned employed, retained and assigned to duties as peace officers by defendant CITY and by their employees, agents and representatives, acting under their direction and control, each of whom at all times material herein, knew or, in the exercise of reasonable care should have known that said defendants had a propensity for violence, cruelty, dishonesty and unlawfulness, including but not limited to conducted a biased or incomplete investigation of officer involved shootings occurring within its jurisdiction, and/or for inflicting on all manner of persons, including Plaintiff John Bright, unreasonable, unnecessary force without a warrant or other lawful justification, all in violation of the First, Second Fourth and Fourteenth Amendments to the United States Constitution, as well as comparable provisions under California law.

161. Following their custom and practice, defendants and each of them conspired to cover up the aforesaid constitutional deprivations, by false statements and material omissions in reports provided to the prosecutor and the Court which proximately caused the shooting of Plaintiff John Bright and his malicious prosecution, inter alia.

162. No defendant intervened to prevent the violation of Plaintiff's constitutional rights alleged herein.

Complaint for Damages

163.   The aforesaid policy, custom and practice of City of Santa Maria and police chief Phil Hansen, caused the injury, loss, damage and harm to plaintiff John Bright, within the meaning of 42 U.S.C. § 1983 and related jurisprudence, resulting in extreme physical and emotional pain to distress to Plaintiff.

WHEREFORE, Plaintiff prays for damages from defendants as follows:

1.   General damages according to proof;

2.   Special damages, including medical, psychological and other expenses, according to proof;

3.   Punitive and exemplary damages against the individual defendants in an amount and manner sufficient to deter others and make an example of the individual defendants;

4.   Loss of earnings, earnings capacity and income as proved;

5.   Costs of suit;

6.   Reasonable attorney fees pursuant to 42 U.S.C. § 1988 and any other fee provisions which may be applicable; and

7.   Such other, further relief as the Court may deem just and proper.

DATED:     November 14, 2022                    LAW OFFICES OF
                                                GARY S. CASSELMAN

                                      By:   *Gary S. Casselman*
                                            GARY S. CASSELMAN
                                            Attorney for Plaintiff

Complaint for Damages